J-A07007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH W. PILCHESKY | : | |
| | : | |
| Appellant | : | No. 1019 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 2, 2019
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0001075-2013

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.: **FILED: JUNE 8, 2020**

Appellant, Joseph W. Pilchesky, appeals *pro se* from the judgment of sentence entered on January 2, 2019, following his jury trial conviction for unauthorized practice of law.[1] We affirm.

The tortuous factual and procedural history of this case is as follows. In 2011, Appellant, although not licensed to practice law in Pennsylvania, offered legal advice and drafted legal documents on behalf of three individuals: Dana Lewis, Sheila Hartman, and Mary Chilipko. On February 27, 2013, the Commonwealth filed a criminal complaint against Appellant, charging him with multiple counts of unauthorized practice of law. On May 13, 2013, Appellant

_____

[1] 42 Pa.C.S.A. § 2524(a).

waived his right to counsel *via* a written waiver and waived his preliminary hearing.

From July 2013 through September 2013, Appellant submitted multiple *pro se* filings,[2] including a motion to disqualify the presiding judge, the Honorable Michael J. Barrasse. As a result of Appellant's motion, Judge Barrasse recused himself on August 26, 2013, and on September 20, 2013, the Honorable Vito P. Geroulo was assigned to the case.

On October 25, 2013, the Commonwealth filed a motion *in limine* seeking to prevent Appellant from asserting at trial the defense of justification by necessity. On November 19, 2013, the trial court held a hearing and subsequently granted the Commonwealth's motion *in limine* on December 17, 2013. On January 16, 2014, Appellant filed a notice of appeal, seeking review of the trial court's order. This Court quashed the appeal as interlocutory on March 17, 2014. Appellant then appealed to our Supreme Court, which denied *allocatur* on May 23, 2014.

After this Court quashed Appellant's appeal, the trial court scheduled trial for May 5, 2014. On April 30, 2014, the trial court conducted a hearing on Appellant's various pre-trial motions. At the hearing, Appellant requested a lawyer. As a result, the trial court continued Appellant's trial to accommodate his request. Shortly thereafter, on May 5, 2014, the trial court

---

[2] Specifically, Appellant filed two requests for discovery material pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963), two requests for bills of particulars, and a motion requesting additional time to file pre-trial motions.

entered an order denying Appellant's pre-trial motions. Appellant filed a motion for reconsideration, which the trial court denied. Appellant then filed a notice of appeal to this Court seeking review of the trial court's May 5, 2014 order denying his pre-trial motions. The Commonwealth filed an application to quash the appeal which this Court granted.

While Appellant's appeal was pending before this Court, he filed a civil action against the assigned judge, Judge Geroulo. As a result, Judge Geroulo recused himself. On October 1, 2014, the Honorable James Gibbons was assigned to preside over the matter. The court held a hearing on October 21, 2014, during which Appellant reiterated his desire for an attorney, but also stated that he did not have representation at that time. Ultimately, the court appointed counsel for Appellant and scheduled trial for September 21, 2015.

On August 20, 2015, Appellant filed a counseled omnibus motion *nunc pro tunc*, which included a petition for writ of *habeas corpus*. Appellant's Omnibus Pretrial Motion *Nunc Pro Tunc*, 8/20/15, at 4-5.

> In [his] petition for writ of *habeas corpus*, [Appellant] argued that "[a] writ of *habeas corpus* should issue in this case and the charges for unlawful practice of law [should be] dismissed since a *prima facie* case cannot be established." **Id.** at 4. Specifically, [Appellant] asserted the following:
>
>> [I]n order for a *prima facie* case for unauthorized practice of law to be made under [42 Pa.C.S.A.] § 2524, the Commonwealth must establish that [Appellant] practiced law in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without [actually] being a [licensed] attorney at law.
>
> **Id.** at 5.

- 3 -

The trial court granted [Appellant's] omnibus pretrial motion in part and scheduled a hearing on the petition for writ of *habeas corpus* for September 23, 2015.[3]  [Trial Court] Order, 8/27/15, at 1.  At the hearing, both parties presented argument regarding the elements necessary to establish a *prima facie* case of the unauthorized practice of law.  N.T. [Hearing,] 9/23/15, at 6–22.  During the hearing, the trial court concluded that a person charged with the unauthorized practice of law must do so in a manner so as to convey the impression that he is a practitioner of the law when, in fact, he is not, in order for the individual to be convicted.  **Id.** at 21.  Following the trial court's determination, the Commonwealth requested certification for purposes of an immediate appeal, and [Appellant] did not object.  **Id.** at 22.  Accordingly, the trial court continued the *habeas* hearing pending the appeal to this Court.  **Id.**

\*\*\*

On December 23, 2015, the Commonwealth filed a petition for permission to appeal in this Court.  Petition for Permission to Appeal, 12/23/15.  By order filed February 2, 2016, this Court granted the Commonwealth's petition for permission to appeal. Order, 83 MDM 2015, 2/2/16.

---

[3] "A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*).  If, however, a defendant waives his preliminary hearing, he is generally barred from later challenging "the sufficiency of the Commonwealth's *prima facie* case."  Pa.R.Crim.P. 541(A)(1).  Herein, Appellant waived his preliminary hearing on May 13, 2013.  The trial court nevertheless permitted Appellant to challenge the sufficiency of the Commonwealth's evidence to establish its *prima facie* case because it concluded that Appellant's waiver of counsel and, in turn, his waiver of a preliminary hearing, were invalid because the trial court failed to conduct a hearing pursuant to **Commonwealth v. Grazier**,  713 A.2d 81 (Pa. 1998). **See Commonwealth v. Aina**, 2020 WL 1528032, at \*4 (Pa. Super. Mar. 31, 2020) (explaining that a court "must conduct a **Grazier** hearing and elicit information in accordance with Pa.R.Crim.P. 121 before [a] petitioner will be permitted to proceed *pro se*," even if an intention to do so "is evinced[.]"); **see also** Trial Court Opinion, 11/25/15, at 2.

*Commonwealth v. Pilchesky*, 151 A.3d 1094, 1095-1097 (Pa. Super. 2016) (footnote added).

On December 6, 2016, this Court reversed the trial court's November 23, 2015 order. *Id.* In doing so, we held that

> the trial court erred by holding that in order for [Appellant] to be convicted of the unauthorized practice of law, the Commonwealth is required to establish that [Appellant] practiced law and that he did so "in such a manner as to convey the impression that he is a practitioner of the law." Should the Commonwealth establish beyond a reasonable doubt that [Appellant] practiced law and was not an attorney, such evidence would be sufficient to convict [Appellant] of the unauthorized practice of law under 42 Pa.C.S.[A]. § 2524(a).

*Id.* at 1100. Thereafter, Appellant filed a petition for allowance of appeal to our Supreme Court and a petition to proceed *pro se*. On June 12, 2017, the Supreme Court remanded the case for a *Grazier* hearing, which the trial court subsequently conducted and granted Appellant permission to proceed *pro se*. Our Supreme Court ultimately denied *allocatur* on November 28, 2017.

On January 5, 2018, Appellant filed a notice of intent to file a petition for writ of *certiorari* to the Supreme Court of the United States. The trial court conducted a hearing on January 11, 2018. At the hearing, Appellant again expressed his intent to file a *certiorari* petition,[4] while the Commonwealth asked the court to schedule trial. Accordingly, the trial court entered an order scheduling trial for October 15, 2018.

---

[4] Appellant ultimately filed a petition for writ of *certiorari*, which the Supreme Court of the United States denied.

On July 16, 2018, Appellant filed an omnibus pre-trial motion. In his motion, Appellant sought to dismiss the action with prejudice due to a violation of his right to a speedy trial pursuant to Pa.R.Crim.Pro 600 and his right to a full preliminary hearing. Appellant's Omnibus Pre-Trial Motion, 7/16/18, at 1-5. In addition, Appellant sought to suppress evidence collected from a Dell computer given to police by his estranged wife, Joanne Ricci Pilchesky ("Ricci"). Appellant claimed that any evidence discovered on or from the computer was "fruit of the poisonous tree" because Ricci allegedly stole the computer from his residence and gave it to the police. *Id.* at 7. Lastly, Appellant challenged the constitutionality of 42 Pa.C.S.A. § 2524(a). *Id.* at 7-9.

On September 5, 2018, Appellant filed a motion *in limine* which contained 49 separate paragraphs. In his motion, Appellant essentially sought to prevent the Commonwealth from introducing all evidence that was not favorable to him while simultaneously seeking to introduce evidence he believed would be beneficial. Appellant's Motion *in Limine*, 9/5/18, at 1-9.

On October 4 and 9, 2018, the trial court conducted hearings during which the Commonwealth presented its *prima facie* case and the court addressed the pending motions. During the October 9, 2018 hearing, Appellant requested permission to present at trial the defense of justification by necessity. The trial court denied Appellant's request. Appellant then "orally requested [the court] to certify this particular ruling under 42 Pa.C.S.A. § 702(b) as an interlocutory appeal." Trial Court Order, 10/11/18, at 1. The

trial court declined to do so. In a separate order, the trial court granted in part and denied in part Appellant's remaining pre-trial motions. *See* Trial Court's Memorandum & Order, 10/11/18, at 1-13.

Thereafter, on October 15, 2018, the day that trial was scheduled to commence, Appellant filed a motion to continue the proceeding. Appellant's Motion to Continue Trial, 10/15/18, at 1-4. Appellant asserted various reasons for the continuance, including personal health concerns and a claim that he had insufficient time to review the transcripts from the October 4, 2018 hearing. The trial court "advised [Appellant] that [it] would delay the commencement of jury selection to allow him to obtain pertinent medical records in support of his request for a continuance." Trial Court Opinion, 5/30/19, at 11. Appellant later returned with medical records. The trial court reviewed the documents on the record but ultimately denied Appellant's motion for a continuance. *Id.*

Following the trial court's denial of Appellant's motion, his jury trial finally commenced. On October 16, 2018, the jury convicted Appellant of three counts of unauthorized practice of law. "On January 2, 2019, [the trial court] sentenced [Appellant] to a combined period of probation of two years, together with an order of restitution in the amount of $1,000[.00]." *Id.* at 1.

Appellant filed a post-sentence motion on January 14, 2019. Thereafter, on April 8, 2019, Appellant filed a motion seeking modification of costs and restitution. On April 15, 2019, Appellant filed a civil action against Sheila Hartman and Mary Chilipko. Thus, the Commonwealth filed a motion

requesting the modification of Appellant's probation seeking to prohibit Appellant from retaliating against any victim or witness in his case.

On May 30, 2019, the trial court entered an order denying Appellant's post-sentence motion and his motion to modify the costs and restitution. The next day, the trial court granted the Commonwealth's motion to modify the conditions of Appellant's probation and directed him to withdraw his civil action against Sheila Hartman and Mary Chilipko. This appeal followed.[5]

Appellant raises the following issues on appeal:[6]

  I.    Was [] Appellant's right to a speedy trial violated?

  II.    Was the jury selection process prejudiced when [the] [t]rial [c]ourt summoned a [65] person jury pool?

  III.    Was [] Appellant prejudiced when [the] [t]rial [c]ourt precluded [him from presenting] the defense of justification [by necessity] to the jury?

  IV.    Was [] Appellant provided with a proper, legal[,] and appropriate preliminary hearing?

  V.    [Did the trial court err in denying Appellant's motion to continue trial when the Commonwealth presented its *prima facie* case only ten days before trial, resulting in prejudice to Appellant?]

  VI.    Is 42 Pa.C.S.A. § 2524(a) unconstitutional?

_____

[5] Our review of the certified record reveals that the trial court did not order Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

[6] We have altered the order of Appellant's issues for clarity and ease of discussion. **See** Appellant's Brief at 5-6.

VII. Was [] Appellant denied the right to confront his accuser at trial?

VIII. Should all evidence obtained from [the] Dell computer stolen from [] Appellant have been suppressed?

IX. Was [Appellant's] court-appointed counsel ineffective?

X. Did the Commonwealth prove at trial that [Appellant] was charged with any crime?

Appellant's Brief at 5-6.

Before reviewing Appellant's claims, we must address the timeliness of his appeal. The timeliness of an appeal implicates our jurisdiction, which we may raise *sua sponte.* **Commonwealth v. Andre**, 17 A.3d 951, 957–958 (Pa. Super. 2011).

> Rule of Criminal Procedure 720 sets forth the procedure to be followed when a post-sentence motion is filed. Under this rule, the trial court must decide the post-sentence motion within 120 days of the filing of the motion. Pa.R.Crim.P. 720(B)(3)(a). … If the trial court fails to decide the motion within this time period, it is deemed denied by operation of law. **Id.** Where a post-sentence motion is denied by operation of law, the clerk of courts is directed to enter an order on behalf of the court and "forthwith furnish a copy of the order ...to ... the defendant(s) and defense counsel...." Pa.R.Crim.P. 720(B)(3)(d).
>
> Ordinarily, the time for filing an appeal begins to run on the date the post-sentence motion is denied, either by the court or by operation of law.

**Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003).

Herein, Appellant filed his post-sentence motion on January 14, 2019. Accordingly, the 120-day period for a decision on Appellant's post-sentence motion expired on May 14, 2019 and, as such, Appellant needed to file his

notice of appeal on or before June 13, 2019. Appellant filed his notice of appeal on June 24, 2019. "However, our review of the record clearly shows that the clerk of courts did not enter an order reflecting that Appellant's post-sentence motion was denied by operation of law. This Court has previously held that, where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of [the] same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances." **Perry**, 820 A.2d at 735 (citation omitted). As such, we decline to quash the instant appeal as untimely and will proceed to the merits of Appellant's claims.

In his first issue, Appellant claims that the trial court erred in denying his motion to dismiss pursuant to Pa.R.Crim.P. 600. Per Appellant, the significant delay between the filing of the criminal complaint to the commencement of his trial is wholly attributable to the Commonwealth because it failed to exercise due diligence and filed an interlocutory appeal to this Court. Appellant's Brief at 19-26. We disagree.

We review a trial court's order denying a Rule 600 motion for an abuse of discretion. **Commonwealth v. McCarthy**, 180 A.3d 368, 373 (Pa. Super. 2018), *appeal denied*, 193 A.3d 346 (Pa. 2018) (citation omitted). Our "scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party." **Commonwealth v. Wendel**, 165 A.3d 952, 956 (Pa. Super. 2017) (citation omitted).

- 10 -

Rule 600 provides, in relevant part:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\* \* \*

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

\* \* \*

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

This Court has explained

the courts of this Commonwealth employ three steps in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical

- 11 -

run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

***Commonwealth v. Bethea***, 185 A.3d 364, 371 (Pa. Super. 2018) (cleaned up).

Herein, the mechanical run date was February 27, 2014. We must, however, "account for any 'excludable time' and 'excusable delay.'" ***Commonwealth v. Colon***, 87 A.3d 352, 357 (Pa. Super. 2014). "Excludable time is delay that is attributable to the defendant or his counsel." ***Id***. Thus, "[w]hen the defendant or the defense [was] instrumental in causing the delay, the period of delay will be excluded from computation of time." ***See*** Pa.R.Crim.P 600, *Cmt*. Moreover, "periods of judicial delay are excludable from calculations under Rule 600." ***Commonwealth v. Mills***, 162 A.3d 326, 325 (Pa. 2017). Excusable delay "is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." ***Colon***, 87 A.3d at 357.

> Due-diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.'

***Commonwealth v. Lynch***, 57 A.3d 120, 124 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1245 (Pa. 2013) (internal citations and quotations omitted).

It is clear that, in this case, Appellant was "instrumental in causing the delay." **See** Pa.R.Crim.P 600, *Cmt*. Indeed, Appellant caused the following periods of delay: July 23, 2013 to September 20, 2013 (Appellant's motion to recuse Judge Barrasse); January 16, 2014 to March 17, 2014 (Appellant's interlocutory appeal to this Court); April 30, 2014 to August 27, 2015 (Appellant's request for counsel, Appellant's counseled omnibus motion *nunc pro tunc*, and the hearing on Appellant's motion); and January 5, 2017 to November 28, 2017 (Appellant's appeal to our Supreme Court following this Court's decision in **Pilchesky**). Moreover, the following periods are attributable to judicial delay: September 20, 2013 to December 17, 2013 (assignment of Judge Geroulo, hearing and subsequent grant of the Commonwealth's motion in *limine*); March 17, 2014 to April 30, 2014 (order scheduling trial to pre-trial hearing); August 27, 2015 to November 23, 2015 (order granting, in part, Appellant's omnibus motion *nunc pro tunc*, conducting the *habeas corpus* hearing, order granting Appellant's motion and certifying for immediate interlocutory appeal); and January 11, 2018 to October 15, 2018 (scheduling trial for October 15, 2018 due to trial court's schedule). As such, a total of 1,427 days are attributable to Appellant and the judiciary; hence, this time is excludable. Adding the excludable time to the mechanical run date, we calculate the adjusted run date to be January 24, 2018.

On December 23, 2015, the Commonwealth petitioned for permission to appeal to this Court, seeking review of the trial court's order granting Appellant's *habeas corpus* petition. This Court granted the Commonwealth's

petition and reversed the trial court's order on December 6, 2016. "It is settled that '[e]xcusable delay' for purposes of [the speedy trial rule] includes delay caused by appellate review of pretrial motions." **Commonwealth v. Selenski**, 994 A.2d 1083, 1090 (Pa. 2010) (citation omitted). Accordingly, the 349 day delay occasioned by appellate review is excusable. This calculation extends the final run date to (at the earliest) January 8, 2019 – nearly three months **after** Appellant's trial commenced. Hence, the trial court properly denied Appellant's Rule 600 motion.

In Appellant's second issue, he challenges the trial court's decision to summon a 65 person jury pool. Appellant's Brief at 50. Per Appellant, this prevented him from effectively questioning those ultimately selected for the jury panel and, as such, prejudiced him "right from the start of the trial." **Id.** at 53. Appellant, however, failed to object during the jury selection process. As such, this claim is waived. **See Commonwealth v. Fitzgerald**, 877 A.2d 1273, 1274 (Pa. Super. 2005) ("the absence of objection to the [jury selection] procedure during the trial proceedings" results in waiver); **see also** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In his third issue, Appellant argues that the trial court erred in disposing of motions *in limine* filed by both parties, which precluded the presentation at trial of the defense of justification by necessity. Appellant's Brief at 45-50.

Preliminarily, we note:

> When reviewing [a ruling on] a motion in limine, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.
>
> A trial court's ruling regarding the admissibility of evidence will not be disturbed "unless that ruling reflects" "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly 'erroneous.' "

*Commonwealth v. Orie*, 88 A.3d 983, 1022 (Pa. Super. 2014) (citation omitted).

> "Necessity" may be raised as a defense if:
>
> (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
>
> (2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
>
> (3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.S.C.A. § 503.

To be entitled to an instruction on justification by necessity as a defense to a charged crime, an appellant must offer evidence to show:

> (1) that (he) was faced with a clear and imminent harm, not one which is debatable or speculative;
>
> (2) that (he) could reasonably expect that (his) actions would be effective in avoiding this greater harm;
>
> (3) that there is no legal alternative which will be effective in abating the harm; and
>
> (4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

As with any offer of proof, it is essential that the offer meet a minimum standard as to each element of the defense so that if a jury finds it to be true, it would support the affirmative defense-here that of necessity. This threshold requirement is fashioned to conserve the resources required in conducting jury trials by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses raised by the defendant. Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense.

*Commonwealth v. Billings*, 793 A.2d 914, 916 (Pa. Super. 2002), *citing*

*Commonwealth v. Capitolo*, 498 A.2d 806, 809 (Pa. 1985).

In ruling that Appellant was not entitled to a jury instruction of justification by necessity, the trial court explained:

In this case, [Appellant failed to present] any evidence that shows that he is entitled to an instruction on [the defense of] justification [by] necessity [to the offense of] unauthorized practice of law. It is difficult to imagine a situation in which the defense of justification would ever be available for the unauthorized practice of law, and in this case, pursuant to the four criteria set forth in *Capitolo*, it is definitely not appropriate. First, [Appellant] was not faced with a real emergency, and the alleged harm was debatable and speculative. By [Appellant's] own admission, the people who approached him for help had allegedly been suffering "harm" for some time and some of the harm was caused by complying with court orders, but this does not constitute an emergency that only he could handle by the unauthorized practice of law. Second, even if his legal capabilities approached the level of his own estimation . . . this does not lead to the conclusion that he [alone] . . . could offer legal help to these people. Third, and most importantly, there were many legal alternatives available to [Appellant]. [Appellant] asserts that he had no choice but to agree to take legal action on behalf of the people who approached him for help, but he could have referred them to any of the thousands of lawyers who are licensed to practice law in Pennsylvania. Finally, the [L]egislature has required that only licensed attorneys may practice law in Pennsylvania, and [] made it a crime for a person who is not licensed to practice law to do so.

- 16 -

The [L]egislature has thus made a clear and deliberate choice that people who are not licensed . . . will not be allowed to practice law, and has precluded the defense of justification [by] necessity to a charge of the unauthorized practice of law.

Trial Court Opinion, 12/17/13, at 4-5. We perceive no abuse of discretion by the trial court in prohibiting Appellant from presenting the defense of justification by necessity at trial.

In Appellant's fourth issue, he argues that he did not receive a "proper, legal[,] and appropriate preliminary hearing." Appellant's Brief at 62. Appellant's claim is rooted in his belief that this Court in **Pilchesky** "dramatically changed the meaning of 42 Pa.C.S.A. § 2524(a)" and, "if a preliminary hearing occurred before [this Court's decision,]" the "Commonwealth [would have been required to] meet [a] different standard." **Id**. Appellant's claim is meritless.

"The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime." **Commonwealth v. Jackson**, 849 A.2d 1254, 1257 (Pa. Super. 2004) (internal citation omitted); **see also** Pa.R.Crim.P. 542(D) (issuing authority shall determine from evidence presented at preliminary hearing whether there is prima facie case that (1) offense has been committed and (2) defendant has committed it). A defendant, if represented by counsel, may waive his preliminary hearing. Pa.R.Crim.P. 541(A). A pro se defendant, however, can only "waive [his] preliminary hearing subsequent to the

preliminary arraignment." Pa.R.Crim.P. 541, *Cmt*. Nevertheless, the waiver of a preliminary hearing without an attorney is not invalid absent a showing of prejudice. ***Commonwealth v. Strawn***, 2020 WL 201736, at *3 (Pa. Super. Jan. 13, 2020); ***Commonwealth v. Melnyczenko***, 358 A.2d 98, 99 (Pa. Super. 1976).

Herein, on May 13, 2013, after Appellant's preliminary arraignment, Appellant executed a written waiver of both his right to counsel and his preliminary hearing. At that time, however, the trial court did not conduct a ***Grazier*** hearing. As such, Appellant's waiver of his preliminary hearing was invalid. For this very reason, after Appellant was appointed counsel and filed a petition for *habeas corpus*, the trial court permitted Appellant to challenge the sufficiency of the Commonwealth's evidence on September 23, 2015. ***See*** Trial Court Opinion, 11/25/15, at 2. After the hearing, the trial court concluded that the Commonwealth was required to prove that Appellant "committed the acts charged 'in such a manner as to convey the impression that he [was] a practitioner of the law of any jurisdiction, without being an attorney at law.'" ***Id.*** at 8 (citation omitted).

Ultimately, however, this Court disagreed with the trial court's determination. Instead, we concluded that, to sustain a conviction under Section 2524(a), the Commonwealth needed only to establish that Appellant practiced law and was not a licensed attorney. ***Pilchesky***, 151 A.3d at 1100. Then, on October 4, 2018, the trial court conducted a hearing in which the Commonwealth presented a *prima facie* case pursuant to this Court's holding

in **Pilchesky**. It is thus apparent that, despite an initial invalid waiver of his preliminary hearing, Appellant actually challenged the sufficiency of the Commonwealth's evidence on **two** separate occasions. Appellant's mere assertion that this Court's interpretation of Section 2524(a) was either novel or incorrect does not result in prejudice. We therefore conclude that Appellant's claim is without merit and he is not entitled to relief.

Appellant's fifth claim asserts that the trial court erred in denying his motion to continue trial. Specifically, Appellant claims that, because the Commonwealth presented its *prima facie* case only ten days prior to trial, he did not have enough time to review the transcripts of the hearing and prepare for trial. Appellant's Brief at 58-62.

Our standard of review when considering a court's decision to deny a motion for a continuance is as follows:

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. [A]n abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record. The grant of a continuance is discretionary and a [denial] is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated.

**Commonwealth v. Griffin**, 804 A.2d 1, 12 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005) (internal citations and quotation marks omitted). Moreover, "[a] bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion."

*Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012) (citation omitted). "An appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice." *Id.* (citation omitted).

Herein, Appellant filed his motion for a continuance on the date of trial, October 15, 2018. In his motion, Appellant claimed that, "[d]ue to inherent time constraints," he could only obtain a portion of the transcripts from the October 4, 2018 hearing and did not have an adequate time to review said transcripts before trial. Appellant's Motion to Continue Trial, 10/15/18, at *2 (un-paginated). On appeal, Appellant contends that he only received the

> "testimony of [Special Agent] Farkus just before trial [and] [] did [not] get the testimony of the [other] three witnesses, but even if he did, having it right before trial was hardly fair. [Appellant] had other things to do in preparation for trial, so time to review [*prima facie*] transcripts was minimal."

Appellant's Brief at 60.

Appellant's bald assertion is insufficient to establish prejudice. Indeed, the mere fact that he could not review the transcripts of the three witnesses prior to trial did not cause prejudice because he was present at the hearing and heard, first hand, their testimony. Moreover, Appellant was aware of the existence of these three witnesses as early as his formal arraignment on June 28, 2013. Thus, from 2013 on, Appellant knew that he was charged with unauthorized practice of law because he drafted legal documents on behalf of

these three individuals without a license to do so. As such, it is clear from a review of the record that Appellant's "rights were not trampled; he simply did not wish to proceed to trial." Trial Court Opinion, 5/30/19, at 8. Accordingly, we discern no abuse of discretion.[7]

In Appellant's sixth issue, he argues that 42 Pa.C.S.A. § 2524(a) is unconstitutional. Appellant's Brief at 26. Our Supreme Court previously stated the standard for analyzing the constitutionality of criminal statutes as follows:

> [W]e begin our analysis by recognizing that there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. As a matter of statutory construction, we presume the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth. A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality.

***Commonwealth v. Mayfield***, 832 A.2d 418, 421 (Pa. 2003) (citations and quotations omitted).

Herein, Appellant advances multiple arguments in an attempt to invalidate Section 2524(a). In essence, however, Appellant argues that Section 2524(a) and this Court's previous interpretation thereof in ***Pilchesky***,

---

[7] We also note that the hearing conducted on October 4, 2018 was originally scheduled for September 27, 2018. It was continued, however, because Appellant requested more time to respond to the Commonwealth's brief in opposition of his motion *in limine*. Trial Court's Order, 9/26/18, at 1. It is ironic that Appellant now claims prejudice resulting from a delay necessitated by his own actions.

"suppress[es] the right to speak or inquire for private interests," and "oppress[es] free thinking and a [private] exchange of knowledge" in violation of the constitutional rights of free speech and privacy. Appellant's Brief at 28-29.

Our Supreme Court previously explained:

The First Amendment to the United States Constitution states in relevant part, "Congress shall make no law ... abridging the freedom of speech[.]" U.S. Const. amend. I. It is well settled, however, that the government may limit the exercise of a citizen's First Amendment rights where government regulations are aimed to address legitimate concerns and not designed to control or limit the content of First Amendment freedoms. **See Konigsberg v. State Bar of California**, 366 U.S. 36, 50–51 (1961)(withholding of bar membership constitutional where applicant refused to answer questions regarding membership in Communist Party thus thwarting investigation into his "qualifications.")[.]

With respect to restrictions on speech, a governmental regulation will be upheld, as a general proposition, if four criteria are met: (1) the regulation is within the constitutional power of the state; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free speech; and (4) the incidental restriction on alleged first amendment freedoms is no greater than essential to the furtherance of that interest. **United States v. Albertini**, 472 U.S. 675, 687 (1985); **United States v. O'Brien**, 391 U.S. 367, 376 (1968).

**Office Of Disciplinary Counsel v. Marcone**, 855 A.2d 654, 667 (Pa. 2004).

Herein, we conclude that Section 2524(a) "does not run afoul of the First Amendment." **Id.** First, the "Pennsylvania Constitution vests [our Supreme Court] with the exclusive authority to regulate the practice of law." **Pilchesky**, 151 A.3d at 1099; **see also** Pa. Const. Art. V, § 10(c). Second, the Supreme Court has "not only an important and substantial interest, but a

compelling interest, in regulating the practice of law within our borders: protecting our citizens from those unfit to practice law." *Marcone*, 855 A.2d at 667. Third, contrary to Appellant's assertion, Section 2524(a) is unrelated to the suppression of free speech because it regulates an individual's conduct. Indeed, Appellant claims that he "was essentially charged with talking with other people in a private capacity in a private setting for private interest." Appellant's Brief at 28. This is incorrect. Appellant not only gave legal advice to various individuals, but drafted and filed legal documents on their behalf. Accordingly, as we stated previously, Section 2524(a) seeks to "[p]rotect[] the public . . . by preventing those who are not attorneys from **practicing law**," not suppressing speech. *Pilchesky*, 151 A.3d at 1100 (emphasis added). "Finally, we find that this restriction is no greater than absolutely necessary to further the significant governmental interest in protecting the public and the [legal] profession." *Marcone*, 855 A.2d at 668. We therefore conclude that Section 2524(a) does not violate an individual's right to free speech or privacy.

In Appellant's seventh issue, he argues that his constitutional rights were violated because he did not "have the opportunity to fully confront his accuser, [Special Agent] Joseph Farkus." Appellant's Brief at 53. Special Agent Farkus served as the affiant for the probable cause affidavit. Appellant, however, failed to raise this objection before or during trial and instead, simply included this claim in his post-sentence motion. "It is settled that an appellant's 'failure to raise a contemporaneous objection to evidence at trial

waives that claim on appeal.'" ***Commonwealth v. Radecki***, 180 A.3d 441, 455 (Pa. Super. 2018) (citation omitted). Accordingly, Appellant's seventh appellate issue is waived.

In Appellant's eighth issue, he argues that the trial court erred by denying his motion to suppress evidence from a Dell computer. Appellant's Brief at 65-66. Appellant argues that Ricci, his "estranged wife," stole the computer from his residence and later gave it to investigating authorities. As such, Appellant claims that any "information gained from [the] computer" was "[f]ruit of the [p]oisonous tree." ***Id.*** at 65.

We review the denial of a motion to suppress as follows:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains un[-]contradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.
>
> ***Commonwealth v. Stevenson***, 894 A.2d 759, 769 (Pa. Super. 2006) (citation omitted). Although we are bound by the factual and the credibility determinations of the trial court which have support in the record, we review any legal conclusions *de novo*. ***Commonwealth v. George***, 878 A.2d 881, 883 (Pa. Super. 2005), *appeal denied*, [] 891 A.2d 730 (Pa. 2005).

***Commonwealth v. Wells***, 916 A.2d 1192, 1194–1195 (Pa. Super. 2007) (parallel citations omitted)

We note:

The Fourth Amendment's protection against unlawful searches and seizures applies only to actions by the government, as "[i]ts origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority[.]" ***Burdeau v. McDowell***, 256 U.S. 465, 475 (1921). It follows, therefore, that "the proscriptions of the Fourth Amendment and Article I, § 8, do not apply to searches and seizures conducted by private individuals." ***Commonwealth v. Faurelus***, 147 A.3d 905, 909 (Pa. Super. 2016)[, *quoting* ***Commonwealth v. Harris***, 817 A.2d 1033, 1047 (Pa. 2002) (citations omitted)].

Where, however, private individuals act not of their own accord but, instead, as an instrument or agent of the state, they will be deemed state actors subject to the proscriptions of the Fourth Amendment. ***Coolidge v. New Hampshire***, 403 U.S. 443, 487 (1971). Decisional law of this Commonwealth has examined the question of what constitutes state action in such circumstances.

> As set forth [in the Pennsylvania Supreme Court decision ***Commonwealth v. Corley***, 491 A.2d 829 (Pa. 1985)], therein, the guiding principles are those first established by the United States Supreme Court in ***Lugar v. Edmondson Oil Co., Inc.***, 457 U.S. 922 (1982). In ***Lugar***, the [United States] Supreme Court held that the conduct allegedly causing the deprivation must be fairly attributable to the state. In explaining the "fair attribution" test, the United States Supreme Court stated:
>
> > [Our] cases reflect a two-part approach to the question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the state. ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because ... his conduct is otherwise chargeable to the state.
>
> ***Lugar***, 457 U.S. at 937. The critical factor for purposes of determining whether state action is involved is whether the private individual, in light of all the circumstances, must be regarded as having acted as an "instrument" or agent of the state. ***Corley***, 491 A.2d at 832, *citing* ***Coolidge***[, 403 U.S. at 487.] Th[e Pennsylvania Supreme] Court made clear in ***Corley*** that mere cooperation with the authorities alone does not constitute "state action." In other words, the mere fact that police and prosecutors use the results of an

> individual's actions does not, alone, elevate those actions to the level of state action. Where, however, the relationship between the person committing the wrongful acts and the State is such that those acts can be viewed as emanating from the authority of the State, the principles established in *Corley* dictate a finding of state action.

*Commonwealth v. Yim*, 195 A.3d 922, 927 (Pa. Super. 2018) (parallel citations omitted).

We conclude that the trial court did not err in denying Appellant's motion to suppress because Appellant failed to establish that Ricci stole the Dell computer from his residence and, relatedly, that Ricci acted at the direction of the Commonwealth. Indeed, upon review of the certified record, it appears that Ricci removed the Dell computer in August 2011 and gave it to law enforcement in November 2011 for reasons wholly unrelated to Appellant's unauthorized practice of law.[8] *See* District Attorney Letter, 3/14/13, at 1. Appellant also failed to offer evidence that the Commonwealth asked or directed Ricci to take his computer. As such, Appellant's claim lacks merit.[9]

---

[8] Ricci gave the Dell computer to police alleging that Appellant utilized the computer to view child pornography. *See* District Attorney Letter, 3/14/13, at 1. She consented to a forensic examination but no evidence of child pornography was located on the Dell computer. *Id*.

[9] We also note that prior to trial, the Commonwealth stated that it would not use any evidence obtained from the Dell computer during Appellant's trial. N.T. Hearing, 10/9/18, at 22. Indeed, no evidence obtained from the Dell computer was admitted at trial and no derivative evidence was discovered by the Commonwealth as a result of its acquisition of the device. Accordingly, even if the trial court did err in denying Appellant's motion to suppress, we would conclude that such error was either moot or harmless or both.

- 26 -

In Appellant's ninth issue, he argues that trial counsel who represented Appellant from March 2, 2015 until August 18, 2017, provided ineffective assistance. Appellant's Brief at 66-67. Specifically, Appellant argues that trial counsel was ineffective because he failed to object to the Commonwealth's interlocutory appeal and agreed that the Commonwealth could utilize statements made by Appellant while acting *pro se* against him at trial. ***Id.*** at 67. Except in limited circumstances not present in this case, claims of ineffective assistance of counsel may not be raised on direct appeal. ***Commonwealth v. Cook***, 175 A.3d 345, 351 n.3 (Pa. Super. 2017). Accordingly, Appellant is not entitled to review of his ineffective assistance of counsel claim within the context of this direct appeal.

Lastly, Appellant argues that the Commonwealth failed to prove that he was charged with "any crime" at trial. Appellant's Brief at 67. Per Appellant, in the absence of testimony from Special Agent Farkus, the Commonwealth failed to adduce sufficient evidence that charges "were filed or existed" or that "a crime occurred." ***Id.*** at 68. We disagree.

Our standard of review regarding the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth may not preclude every possibility of innocence. Any doubts regarding a

defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014–1015 (Pa. Super. 2002) (citations omitted).

Section 2524(a) defines the offense of unauthorized practice of law as follows:

**(a) General rule**.—Except as provided in subsection (b) [related to practice by associations], any person, including, but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree upon a first violation. A second or subsequent violation of this subsection constitutes a misdemeanor of the first degree.

42 Pa.C.S.A. § 2524(a). As this Court explained previously, if "the Commonwealth establish[es] beyond a reasonable doubt that [Appellant] practiced law and was not an attorney, such evidence would be sufficient to convict [Appellant] of the unauthorized practice of law under 42 Pa.C.S.[A]. § 2524(a)." *Pilchesky*, 151 A.3d at 1100.

- 28 -

The trial court summarized the relevant testimony/evidence presented as follows:

> Dana Lewis testified that she reached out to [Appellant, who she admitted was not an attorney,] for assistance in a custody dispute. She testified that she gave [Appellant] information about the custody case, that he assisted her in drafting legal documents and in filing those documents. She further testified that [Appellant] asked her for payment of $3,000.00 for his assistance. Additionally, the Commonwealth offered [electronic mail] communication between Dana Lewis and [Appellant] as well as the documents identified by Lewis that [Appellant] assisted her in drafting.
>
> ***
>
> [Appellant's] second count concern[ed] Sheila Hartman. Hartman testified that she was advised by [Appellant] that her attorney had done things incorrectly in a civil lawsuit in which she was involved with her former employer. Hartman further testified that in exchange for payment, [Appellant] drafted correspondence and motions for her so that she could terminate her previous attorney and request her file from him. Hartman paid [Appellant] $1,000.00 for the drafting of documents to be filed in her case. The Commonwealth also offered documentary evidence of [Appellant] supplying legal advice to Hartman as well as the documents he drafted.
>
> The third count involved Mary Chilipko. Chilipko testified that she was a neighbor of one Edward Blasko who had once been a resident of the Greenridge Assisted Living Facility. Chilipko testified that she and Blasko discovered that the owners of the facility had continued to cash his Social Security checks without his knowledge or consent. Chilipko testified that she contacted [Appellant] on behalf of Blasko and indicated that [Appellant] wanted to help and advised filing a lawsuit against the owners of the facility. Chilipko testified that [Appellant] prepared a civil action on behalf of Blasko seeking return of the Social Security check money as well as damages. [Appellant] filed the lawsuit after obtaining Blasko's signature. Appellant was paid $500.00 for his assistance.

Trial Court Opinion, 5/30/19, at 16-18.

It is undisputed that Appellant, during all times relating to the allegations made by Lewis, Hartman, and Chilipko, was not licensed to practice law within the Commonwealth of Pennsylvania or any other state. When viewing the aforementioned evidence in the light most favorable to the Commonwealth, we hold that the evidence presented in this case was sufficient to prove that Appellant practiced law and was not an attorney.

Because none of Appellant's issues warrant relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2020